will begin our day today with a case of United States v. Morgan. We'll hear first from Mr. Caruso. May it please the court, Michael Caruso, Assistant Federal Public Defender, on behalf of Steven Morgan. Because of the police's conduct in this case, the district court judge suppressed three statements that Mr. Morgan made during three separate custodial interrogations. There was a statement elicited from him in the apartment after the controlled delivery, which was taken without giving the benefit of Miranda warnings. There was another statement taken shortly thereafter in the HSI car, where he remained handcuffed after he invoked at least his and Fifth Amendment rights remained silent. Many months later, there was another statement taken from him at the HSI office, which the judge found was involuntary. So the crucial issue in this appeal is one, whether the government proved that Mr. Morgan voluntarily abandoned the LG phone. And I think, right, so the second of the two statements that you've referred to, the second is key to the abandonment. The second episode is essentially our whole case, Judge Newsom. But you don't contend, do you, that the second statement was actually coerced? We do contend that, Your Honor. The second statement, I know the third statement, but the second statement as well, what's the evidence of actual Fifth Amendment coercion? So if you take the second episode in context, we know that he's detained, seized, and handcuffed in the apartment where he's questioned. He's then taken to a police car, put in the backseat, still handcuffed. I mean, I certainly take it that he's in custody for Miranda purposes or whatever, but I guess I'm trying, I mean, you know the distinction that I'm trying to draw here because I think it might make a difference, you know, I think it would make a difference whether he was, whether his will was overcome and he was coerced into saying something as against whether his Miranda rights were violated. Yeah, so Your Honor, we absolutely do believe and assert that he was coerced. So he was given his Miranda warnings. He invoked his to remain silent. Agent Gaviria then left the scene, came back shortly thereafter to question him. And under this court's precedence, she was not, she did not follow the proper reinitiation steps to question him after he invoked his right to remain silent. And when you look at exactly what she said to him, while after he invoked his right to remain silent, and that's docket entry 115 on page 14, it's a paragraph, she says after she approaches him and tells him she wants to talk to him about the phones, the phones that the agents had already questioned him about in the apartment, she says he became flustered. So that's some evidence that this is not a sort of ordinary chat between the agent and Mr. Morgan. But is I mean, plain old trickery isn't coercion, is it? Oh, I think yes and no. I think we would not say that this is plain old trickery. If you look at exactly what she said to him. And again, that's on docket entry 115 page 14. He became flustered and said, I don't know, I'm not sure. Again, he's invoked his right to remain silent. She's approached him again, improperly. He continues to invoke his right to remain silent. And then what does the agent say to him? So I clarified that I wasn't trying to interrogate him or ask him any questions about the case. I just need to know if they belong to him so that I can a note of who the property belonged to. So the first part of that statement, she actually contradicts the Miranda warnings. Right. So the Miranda warnings that we all know from TV and law school and practice, is that anything you would let's accept, as Judge Newsome pointed to you, that she tricked him. Let's accept that Miranda was violated. The essential question here is whether the trial judge clearly erred, because we're not looking at this de novo. And there certainly are reasons to support the notion that whatever the statement was, and even in violation of Miranda, that it wasn't coerced. So help me understand how you get around these facts. One, there was really only one question that was asked in the car. Two, the interrogation, if we would call it that, was really, really brief. Three, I don't think there's any threat. Certainly there's no overt threat of any kind that was made. Four, no weapons were drawn. Five, it happened in broad daylight in the backseat of a car on the street. Would those not be some indicia to support the finding that the statement was voluntary and not coerced? You know, I don't think so, Your Honor. A number of the factors you point to, and we agree there was no physical coercion here. But if you recall, and I know you do, Miranda is not concerned with physical coercion, right? But I think the important thing is that given the Supreme Court's decision in Patain, I recognize it's a plurality, but you've got the Kennedy concurrence that seems to be sort of on board for that analysis. Given that decision, I think it really matters to your case whether or not there's actual Fifth Amendment coercion here or a technical violation of Miranda. I'm not trying to pooh-pooh it, but those two things are different. Patain seems to say, look, if it's just Miranda, then they might be able to use it. Right, absolutely. And Patain, just to be clear, was a case where no Miranda warnings were given. Yeah. I mean, do you think that makes a difference, though? I mean, it's true that the nature of the Miranda violation in that case was different. It was a pre-warning, an unwarned statement. But here, there's still a violation of Miranda. It's just a little different. Here, the warnings are given, and then the questioning recommences. So respectfully, I would disagree with your characterization that this was just a Miranda violation. To get back to your earlier question, if you look at this court's decision in Lal, A-L-L-L, I think cited by the government, when you look at what the agent said to him, undermining the Miranda warnings, basically saying, I'm not here to talk to you about the case, when she clearly was there to talk to him about the case, that undermines the Miranda warnings that he invoked. It undermines his free and rational will. And that is what we say is the psychological core. Let me just come back to my question. In Lal, we say that to determine voluntariness under the due process clause, which is what we're really talking about here, you have to examine the totality of the circumstances. And I'm simply asking, if you examine all of them, and I cited four or five things that did or did not happen here, why would it have been a clear error for the trial court to reach the different conclusion? So if I may just comment on that briefly, so I see a difference between the clear error standard for facts and the resolution of whether he voluntarily abandoned the LG phone. I think that's an application of the law to the facts. But is the finding of coercion, a mixed question of law or fact or a building block of fact? You know, I would district judge says, this guy was coerced by the cops. And I find therefore that the statement was involuntary, and it violated the due process clause of the 14th amendment. And if you unpack those statements, the last two are plainly legal determinations. But the finding of coercion, would that be a building block of factor? Is that a mixed question of fact and law? I think that's a mixed question. So if you look at the law case where this court said, you have to look whether the agent's statements to the person undermined his free and rational choice to talk to them. That is a mixed question applying the law of coercion to what actually happened on the scene. And if we go back to Miranda, you know, Miranda clearly says that if you don't give warnings, there's a presumption of coercion. That's nearly irrebuttable. Here we have a person who invoked his right to remain silent. She came back to him shortly thereafter, deceived him and essentially told him, I know you invoked your right to remain silent, but I'm not here to talk to you about the case, which in essence is communicating to him, anything you tell me will not be used against you. So that is what we're saying is the psychological coercion, which Miranda noted was a purpose of the rules that they enacted in that case. And just to, you know, usually when we think of psychological coercion, we have these, these images in our mind, somebody stuck in a cell and they leave the lights on 24 hours a day. And this goes on and on. But you have a guy in the car for a few minutes and the cop comes over and asks him a question. Let's accept it was a ruse. Strikes me as a little different from characterizing it fairly as psychological coercion. But it was a trick. I can accept that it was a ruse, but as Judge Newsom pointed out, the courts have approved that, at least have not found that converts the statement into coercion. I would dispute that premise, Your Honor. I think Lal was clear that every ruse is not permissible, especially when you're talking about trying to get a suspect to voluntarily go back on his invocation of braids. I think Lal is crystal clear when a police officer and a subsequent communication undermines the Miranda warning and overtakes the suspect's will to make a free and rational choice. That's psychological coercion. And to get back to Judge Newsom's earlier point, so I think there are two issues. I think we win under the Fruits Doctrine because that statement was psychologically coerced, but we also win under the Chavez Supreme Court case that you cannot introduce a suppressed statement to prove abandonment. The text of the Fifth Amendment says that you can't use a statement in a criminal case against a defendant. And that's the core principle of the Fifth Amendment. And here, the prosecutor introduced a statement that the judge suppressed to prove voluntary abandonment. And so we think under the Chavez Supreme Court case, the Tenth Circuit case of VOT, V-O-G-T, and the Tenth Circuit case that followed, Chavez again, which basically said you cannot use a suppressed statement in a suppression hearing. We think, you know, based on that, you know, Mr. Morgan has two paths to victory here. So I'll reserve the remainder of my time. Thank you. All right. Thank you, Mr. Caruso. We'll hear next from Ms. Cohen. May it please the Court. Alex Cohen for the United States. The issue in this case ultimately comes down to voluntariness, and the record here reflects that the statement abandoning the phones was voluntary. Let me ask you about that because I actually have some deep concerns about this. The statement that she made was, she told him, I wasn't trying to interrogate him or ask him any questions about the case. I just needed to know if the phones belonged to him so I could make a note of who the property belonged to in case I needed to return it. She's basically saying, I know we just Mirandized you, but don't worry. And we just told you that anything you say could be used against you in court. But don't worry about that because this isn't for that purpose. This is outside of that. This seems more than just a trick or a situation where you say, well, so-and-so already told us this, that type of a situation, which causes somebody to decide they want to speak. This is an actual negation of the Miranda warning, and that seems very different to me and much more like the situation in law than just a basic trick. I want to give you an opportunity to respond to that. Yes, Your Honor. So first, we don't know from this record that this really was deceptive. All we have in the record is her testimony that she was asking for the administrative purpose of knowing where to return the phone. But even assuming that it was deceptive, we think this is more like- I'm sorry, I don't understand. I don't understand that response. Are you saying she did not say- Oh, no, Your Honor. We acknowledge that is what she said, but we think she may have- Why wouldn't that be deceptive? She's basically telling him, I'm not trying to interrogate you or ask you any questions about the case. I'm just asking you so I know whether I should return these phones to you. We think when I say it's not deceptive, it may not have been deceptive. I mean, that might have been her genuine reason for asking the question. She wasn't necessarily lying as to her true purpose in asking, but- What difference does that make? I mean, it seems to me that if she negates the Miranda warning and says, look, I'm carving this out, whatever you say to me now, which is basically what she's communicating, whatever you say to me now, you don't have to worry. It's not going to be used against you. Why does it matter whether she intended to deceive him or not? Correct, it doesn't. Whether she was intentionally deceiving him or not is legally irrelevant, but we don't view this as her specifically lying about how she's going to use the statement. We think her statement, I'm not trying to interrogate you or ask you questions about the case, is her describing what her purpose or motivation is in asking the question, which this court has held in Spivey and Farley does not, even if it's a lie about her motivation, it does not render his response involuntary. But again, the problem is, and we just talked about this, regardless of what her intent was, if it is reasonably understood, and I think it could have been, and the best reading of this is it would have been reasonably understood to say, look, we just gave you Miranda warnings. We told you anything you say could be used against you in court, but not this. Don't worry. This, I'm asking for like an administrative purpose. This isn't going to be used against you in court. Well, to contrast to law, in law, the officers specifically told the suspect whatever information he shared with them would not be used to prosecute him. That's a very direct representation that nothing will be used against him. I don't think her much more vague and attenuated statement that I'm not trying to interrogate you is akin to what happened in law. And even if he were to have interpreted this as her somehow saying that she would not use what he said against him, you know, first, that would not be a correct interpretation of what she said, because as we know, there are many things that do not constitute interrogation, but are nevertheless used against the defendant. For example, had she said, you know, can you tell me what your address is? And he had provided that address and the address turned out to have a lot of incriminating evidence there. That would not be interrogation. And nevertheless, that evidence and his statement of his address. Do you think under the circumstances of this case, that discussion between the officer and the defendant in the police car was the equivalent to getting just basic pedigree information, time, place and account, the kind of stuff when you book somebody, you might ask the name, rank and serial number, where do you live, that kind of thing. Do you think under these circumstances that questioning was of the other sort? Correct, Your Honor, our view is that this isn't even a case called the Hubble and the act of production doctrine. Are you familiar with Hubble? Well, let me put it to you this way. Are you familiar with the idea that just the act of producing something can be testimonial if it if it conveys anything like this is my phone, for example, you're admitting that it's your phone. So assuming that that's what the law is, why isn't that why isn't that a problem in violation of Miranda as opposed to just asking? Why doesn't that remove it from the situation of asking your address? My understanding is that the standard is whether it was reasonably likely to lead to incriminating information. And I think it's significant here that she didn't yet know that the evidence was going to be on that particular phone. So when she asked the question, the fact that it ended up leading to incriminating, but seriously, change in nature, the phone is there. She thinks it's his phone. She knows they've just busted him. They went to the problem to the trouble of getting a search and anticipatory search warrant. They have everybody there. I mean, seriously, if she didn't have any idea that there was going to be any evidence on the phone that that just that doesn't ring true with me. I mean, to just put it a little bit more in context, there were five phones found in this apartment. There were three in the room with the other man in the apartment. Elizondo, one of those phones Elizondo claimed was not his. There were two found on the defendant Morgan's person. I think under these facts, it may be a little bit more reasonable that she's asking which phones are his. And it was the iPhone, not the LG phone. I'm sure that she was asking which phones were his. But the problem with asking which phones are his is because she's basically asking him to testify that whatever you find on this phone, you can use against me. That's the problem here. That's what she that's what she's asking him to say. And that is a I mean, that's a violation of the Fifth Amendment. Well, two responses to that. So first to just finish up on the interrogation point as to whether there's interrogation. Another way of looking at this, in our view, is that this is sort of like a precursor to asking for consent to a search. So we analogize the cases from other circuits where a question about ownership, such as which room is yours in a house, is not asked as interrogation, but it's asked for the administrative issue of determining scope of consent. And that before asking for consent, which I mean, the Supreme Court has said that your phone is has has all of the information that you can imagine that it's more private in many ways than your house is. And if you're asking somebody, is this your phone? Right. You're asking them to admit that everything that they find within the phone. Is it can be attributed to the person who owns it. And so it's I mean, are you suggesting let me ask it to you this way. Is it your position that it is not a testimonial question or answer if you say, is this your phone and the person says yes or no? I think it depends on this. If once she knew that there was evidence on the phone, then certainly asking the question would lead to a testimonial response. I think it's different if we assume from this record that she did not know that yet. Why is there's another? Oh, because if she didn't know that there was evidence on the phone, I don't think it's as likely to lead to incriminating information, for example, if she would have thought he was using the iPhone, which got the call from St. Martin as the phone that he used in furtherance of the crimes and maybe not the other one, or if she actually really didn't know if this phone. What's the basis, though? What's what what authority can you point to for the idea that if she didn't know with 100 percent certainty that there was evidence on the phone, it's not testimonial? I'm just using as an analogy the cases we have on asking which room is yours in a house, which we cited the case Tapia Rodriguez for that proposition that that's not interrogation. And the defense cited some cases in a response to a 28 day from other circuits. And one of them actually involved facts where the officers knew a car was used as a getaway car. So asking who owned that car was interrogation. So I'm just contrasting these cases to get to the conclusion that if you know that there's evidence somewhere and you ask about ownership, that certainly is interrogation. However, if you don't know, like, is this your room situation? You're never going to know for certain that there's evidence on the phone until you look at the phone. So couldn't you always use this as some kind of reason why it's not testimonial? That just I'm not understanding the doctrinal reason for why in this kind of a context where there are five phones. And there are, you know, and two of them are found right near him, and we're only asking about those two. And you're and the agent is asking, is this your phone? Why it's not testimonial, just because she doesn't know for certain that there's evidence on it. So let's just accept your honor's position. It's interrogation. But for the sake of argument, let's go with that, because I'd like to make some additional points. Let's say it's interrogation. I still just want to know in response to your primary concern about her statement that she's not trying to interrogate him. You know, even if it's that even if that was incorrect, I want to I don't think this record reflects that he really believed she was promising he wouldn't use his response in any way. Because if he really believed she wasn't going to use his response, there would have been no reason for him to make a strategic choice to distance himself from the LG phone. Can I ask you a slightly different question? Let's assume for the purposes of my question. Yes. That a conversation in the car by the agent was an interrogation. Let's further assume that she went in there to trick him. Let's just assume that that it was a ruse. Yes. If I understand the thrust of Mr. Caruso's argument under all of the circumstances in the case, including critically what happened earlier in the apartment where he invoked his Miranda warnings, and then she went out and violated his Miranda warnings intentionally. And not only did she do that, but she misled him. She made it sound like she really was concerned about who to give the phone back to when that really wasn't what's going on here. Is that sufficient evidence to establish coercion? Does that turn this interrogation at that time in the back of that car in broad daylight into an involuntary statement? If it does, you lose. This case is over. I don't think that even the circumstances all looked up together turned this into coercion. And here's why. So first, after the officers initially came into the apartment and put him in handcuffs, held him at gunpoint, etc. When he made the initial statement that they were his phones, it was after all of that. The only circumstances that changed between when he said they were his phones and when he abandoned his phones was he was brought into the HSI vehicle, and he was read and invoked his right to silence. Now, we already know that being questioned in a patrol car doesn't render abandonment involuntary from the former Fifth Circuit's finding opinion in Colbert, where the suspects were questioned by police in a police car about whether they own property and their abandonment was still held to be voluntary. So I think what we're really looking at is the Miranda violation. And to respond to Judge Newsom's question to the other side, both this court and the Supreme Court have treated Miranda violations the same, regardless of whether they're unwarned or whether they're after the invocation of a right. For example, in Oregon v. Haas, the Supreme Court recognized that a statement it could still be used for impeachment purposes because that statement was voluntary. And this court in Hidalgo recognized that someone could voluntarily consent to a search after invoking the right to silence. So I think not every single thing that somebody says after their right to silence is invoked is necessarily coerced. And I think there's a few circumstances indicating here that it wasn't. Let me ask you a prefatory question that I had a finding of fact or a conclusion of law. It's a finding of fact under Schmechloff v. Bustamante. We're talking about coercion now, specifically. Yes. I think coercion is a finding of fact requisite to the voluntariness determination. So I think that the judge here did find that this was voluntary abandonment, and therefore the statements were not coerced as a matter of fact, and that's before this court unclear error review. Let me ask you a different question factually. I was sort of curious about it, and I didn't see the answer in the briefs. As I understand it, the officers go into the apartment. There are a couple of people there. They find the defendant in the apartment, and he has two phones. Did he have them on his person, in his hand, in his pocket? Where were the two phones? There was testimony at trial that they were on his person, but there was no specificity as to where on his person they were. Okay, there was a second phone. Did the government ever seek a search warrant for that one? There was an issue with delay in the search warrant application, and we ultimately... I didn't ask why. I asked the what. We did not ultimately seek a... So you sought no warrant for either phone? Correct. And with respect to the phones that you just said, there was testimony that it was on his person. Yes. Isn't it true that in cross-examination, it was revealed that nobody was able to testify that it was on his person, that Torres said they were on the floor, and that Gaviria said that she received the information about where they came from from Torres? I believe Gaviria testified that she found the phones on his person, but if I'm mistaken in that recollection, there was still other overwhelming evidence that the phones belonged to him. Okay, but just to be clear, you are relying on Gaviria's for the proposition that the phones were found on his person. Isn't that right? That's right. Okay, you're not relying on anything else. Correct. So if Gaviria testified that she got the information solely from Torres, then that doesn't help us, right? That's correct, but to the extent that there was any error there, again, there was overwhelming evidence the phones belonged to him, including subscriber records, text messages sent that were addressed in his name, his email accounts on the phone, et cetera. So if there was an error with that perspective. Right, but you got that all after you looked at the phone. Correct. Okay, thank you. We'll hear next from Mr. Caruso. You have three minutes. Just to put this in perspective, the testimony was, as Judge Rosenbaum alluded to, when the police came in, guns drawn, they seized two phones off Mr. Morgan's person. They then asked him, did we know Mr. Caruso wear on his person? We don't. They said it was on his person. That's undisputed. That's undisputed that they said that. Yes, your honor. And then he's asked again during this encounter, are these phones yours? He says, yes. So if you put that in one box and the district court judge asked this question to the trial prosecutor, if you only have that evidence, there's no question about abandonment, right? Those are his phones. The only evidence that gets them to abandonment is this encounter between Agent Gaviria and Mr. Morgan in the car. And, you know, we will sort of stand on lull for the proposition that while yes, deception in all cases is not impermissible, in this case, for the reasons I stated, for the reasons Judge Rosenbaum stated earlier, the agent undermined those Miranda warnings and communicated to him, although we agree not as clear as in lull, but in essence, that I'm not here to talk to you about the case. I'm not here to interrogate you. And remember, that's after she said he was flustered when she re-approached and he hesitated before he answered her question. He only answered her question when she massaged her communication to him to let him know that this was not going to be used against him. So if I understand correctly, so since the meta issue here is the Fourth Amendment abandonment right? That's where this is all headed. That's clear error, right? Everybody recognizes that. And then you've got sort of, you know, if you take the totality of the evidence, you've got some evidence on both sides. You've got the first statement where he says, they're both mine. The second statement, which I know you contest where he says, no, no, just one of them. And then I guess also in fairness, on one side of the ledger is the fact that he never sought to reobtain the phones, unlike the guns. So that's some indication of to finish. If that's the universe of information, then clearly not, we can't reverse unclear error. And so it seems that the argument really does come down to the second statement's place in this abandonment analysis. And the analysis of that seems really to come down to whether or not this is what I'll call true coercion of the law variety or a Miranda violation of the pertain variety, because if it's this, you win, if it's this, you lose, your honor, you know, our position, we think we went on, we think we went on both grounds. So let me just ask you a question, if I could, about that. It seems to me that we can't really use the idea that he didn't ask for the phone back against him, because that would also be like putting him to a test between his Fourth and Fifth Amendment rights. And it's sort of analogous to the act of production doctrine. But maybe I'm mistaken about that. I just wanted to ask you for your thoughts on that. No, I think you're absolutely right. And we did respond in to a government's 28 J letter, that claiming ownership is clearly a testimonial statement. But we cited a case, and I think both in our initial and reply to these, Gwen from the Eighth Circuit, that talks about the failure to later claim when there was an actual government seizure of your property. All the failure to claim cases cited by the government, none of them involve a government seizure. The Sparks case involves a private person. The Green case, which does involve a government seizure, is very clear that the critical pivot point in that case is that the police officer told the suspect that within 48 hours he could ask for the phone back and get it back. Here there was an official seizure through Gaviria's statement to him in the car. She made it clear to him that she possessed this phone, she had seized this phone, and it was up to her whether he would get it back. And like you said, sort of merely asking for the phone back would be a sort of admission of guilt with regard to the case, because we know that at the initial seizure, one of the phones rang with a Saint Martin number, which was the source country of the drugs. Thank you. I have, if I might, a follow-up question, Mr. Caruso. We all agree the issue boils down, in this case, to whether or not the statement was voluntary, whether there was coercion, or whether it violated the due process clause of the 14th Amendment. If I understand your argument, you say it falls into the coercion category for three reasons, and I want to cite them, and then I want you to tell me if I'm missing something, if there's something else. First, you have the confluence of events. He invokes Miranda at the outset, and then in violation of Miranda, he's interrogated with regard to one question. Is this your phone? Did you abandon it? Just want to know about the phone. You cite that in the course of the colloquy, he exhibited, the word you used was frustration.  Flustered. Okay, flustered. And finally, you have the argument that this was a ruse, although candidly, the district court makes no such finding, and obviously credited the reached the conclusion that he did. But let's assume all of that. Flustered, trickery, violation of Miranda. Is there anything else that you can point me to that would suggest this is coercive beyond those observations? The fact that he was seized and handcuffed in the apartment, and then brought to the back of a police car and handcuffed. So he's obviously at an obvious disadvantage with the police. The police agent is questioning him while he's physically restrained. I would also clarify when you say he was asked one question. He was asked a follow-up question, and there's no doubt the judge found that this was custodial interrogation. So after he invoked, she came back to him. She flustered him by his question. He hesitated in answering. When she made him a promise this was not about the case, he answered. He answered the Apple phone is mine. The LG phone is not mine. And then she asked him a follow-up. Are you sure? Because I've been told by my colleagues, you said both of these phones were yours. So this is clearly interrogation, clearly about the case. For me, you don't have to convince me that it was interrogation. I think that's easy. I'm trying to convince you. Whether it's coercive. Thank you. All right. Thank you, counsel. Thank you, Your Honor.